## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARTHA MCCLENDON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **RHEA COUNTY SCHOOL DISTRICT,** | ) | **JURY DEMAND** |
| **SPRING CITY ELEMENTARY SCHOOL,** | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

Comes now Martha McClendon (the "<u>Plaintiff</u>"), by and through counsel, RMR Legal PLLC, and states the following:

## INTRODUCTION

Plaintiff, a disabled teacher who held tenure at Rhea County School District, faced an unfortunate dilemma—leave her workplace that she dreamt her whole life to work for or continue to face harassment, bullying, and retaliation from upper management and administration. Plaintiff was diagnosed with lupus disease, scleroderma, fibromyalgia, depression, and ADHD throughout the course of her life. In fact, Plaintiff's body frailty substantially affects her ability to complete daily functions—nevertheless, Plaintiff persevered through the tenure process at the school she dreamed of working for since she was a young woman.

Defendants knew of Plaintiff's disabilities and initially worked with her to accommodate and otherwise facilitate a safe working environment for Plaintiff. However, over time, bullying, increased harassment, and eventual constructive termination all arose after Plaintiff reported issues to upper management and administration. This retaliation led to a horrendous occurrence—a meeting with law enforcement and the Department of Homeland Security as Plaintiff was reported

as an alleged "threat to mass violence" while cleaning out her classroom over the Christmas break after requesting to be placed on Family and Medical Leave ("FMLA") due to her diagnosed panic disorder caused by the harassment and bullying at the workplace. A tenured teacher cleaning out her classroom, with barely the physical strength to zip her own clothes, was reported as a mass threat to law enforcement. This occurrence, especially after the increased discrimination and retaliation regarding Plaintiff's accommodations, led to the unfortunate decision Plaintiff was forced to make in leaving her post as a tenured teacher. Plaintiff believed RCSD (as defined herein) was a safe place to work for those facing disabilities. Not so.

## PARTIES

1.      Plaintiff Martha McClendon is a citizen of Tennessee residing in Rhea County, Tennessee during all the relevant time periods.

2.      Upon information and belief, Defendant Rhea County School District maintains a principal place of business located at 1385 Broadway Street, Dayton, TN 37321.

3.      Upon information and belief, Defendant Spring City Elementary School maintains a principal place of business located at 270 E. Jackson Avenue, Spring City, TN 37381.

4.      Pursuant to 42 U.S.C. § 12111, Defendants were at all times an employer as defined under the statute (hereinafter, "ADA").

5.      Pursuant to 29 C.F.R. § 1630.2(g) and (h), Plaintiff can be defined as disabled.

6.      Pursuant to applicable Tennessee state law, Defendants can also be defined as employers at all relevant time periods. As such, the Tennessee Disability Act (hereinafter "TDA") is also applicable here. *See* T.C.A. § 8-50-103 and 8-50-104.

2

## VENUE & JURISDICTION

7.      This Court has federal question jurisdiction over the Parties in this action pursuant to 28 U.S.C. § 1331.  This action is brought forth pursuant to the *Americans with Disabilities Act.*

8.      Venue in this district and division is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Rhea County in the State of Tennessee; a substantial part of the events giving rise to this action occurred within the district and division of Rhea County in the State of Tennessee; and the Defendants are subject to personal jurisdiction within this district and division in Rhea County in the State of Tennessee at the time this action is commenced.

9.      Plaintiff followed all relevant time periods with regards to her ADA suit—including lodging her charge of discrimination with the EEOC within relevant time periods, receiving her *Notice of Right to Sue*, and lodging this complaint within ninety (90) days of receipt of her *Notice of Right to Sue*.

## GENERAL FACTUAL BACKGROUND

10.      On September 16, 2024, Plaintiff filed her charge of discrimination with the U.S. Equal Employment Opportunity Commission (hereainfter "<u>EEOC</u>").

11.      On January 9, 2025, Defendants filed their position statement regarding the above-mentioned charge.

12.      On March 20, 2025, Plaintiff received her *Determination and Notice of Rights* document—giving her the opportunity to lodge this suit.  *See Charge No.* 494-2024-02461.

## SPECIFIC FACTUAL BACKGROUND

13.     Beginning on or around early 2023, Plaintiff began to recognize her exclusion or otherwise isolation from important school-related meetings.  At that point, Plaintiff was a 1st grade teacher with Rhea County School District (hereinafter also "RCSD").

14.     There were multiple occasions throughout the 2023 school year where Plaintiff was subjected to "bullying-styled" harassment—including leaving her students out of events and having things thrown at her door.

15.     Soon thereafter, new leadership and administration joined the elementary school. At this point, Plaintiff felt comfortable to report these actions.  Nevertheless, upon reporting of the same, Plaintiff was subjected to increased harassment.

16.     A variety of members of the RCSD began to comment on Plaintiff's physical ailments/diseases—especially her usage of medication to treat her ailments.

17.     Of importance, Plaintiff currently is diagnosed with lupus disease, scleroderma, fibromyalgia, depression, and ADHD.  She has also taken leave for what was diagnosed as panic disorder associated with the harassment alleged in this Complaint.

18.     During the month of May 2023, several occurrences of disrespectful actions and harassment arose.

19.     Beginning in the 2023-2024 school year, the harassment/bullying increased dramatically.

20.     At the beginning of the school year, Plaintiff's lights went out in her classroom. She was accused by the head maintenance director, Gary Whitmore, of breaking her light switch, despite barely having the strength in her hands to zip her own coat.

4

21. Shortly after this incident, a licensed therapist/outside school therapist dropped by Plaintiff's classroom unannounced and asked a series of personal questions—including those questions regarding Plaintiff's medical diagnoses, any medication she was taking, and other mental-health related issues. Interestingly, this individual is the wife of the vice-principal at Plaintiff's school.

22. Despite belief that communications with a licensed therapist would remain private pursuant to applicable HIPPA laws, this discussion was disclosed to relevant RCSD administration members—further igniting issues between the parties.

23. Shortly after this therapist incident in early August, another troubling incident occurred. A student in Plaintiff's classroom had a behavior incident, and Plaintiff was physically harmed. Plaintiff sought assistance, considering her physical condition and frailty, but no help was provided by RCSD administration.

24. In fact, shortly after this incident, the vice-principal Mr. Mart Shelton verbally assaulted Plaintiff in her classroom telling her to "get herself together or leave".

25. Thereafter, another incident occurred. After a brief discussion regarding a special-education student's needs, Mr. Chris Talent, the special education director, also verbally assaulted Plaintiff by yelling aggressively and threateningly.

26. A variety of incidents occurred between October 2023 through December 2023. At all relevant time periods, Plaintiff remained in contact with RCSD administration, including the Superintendent, regarding these incidents.

27. Beginning in December of 2023, more teachers began their onslaught of harassment against Plaintiff. In fact, at least one (1) teacher began to forcibly and physically ram into Plaintiff while she would walk through the halls—despite her physical ailments.

28.    In early January of 2024, a garbage can was left directly in front of Plaintiff's classroom door.  This is believed to be continued exemplification of the internal harassment at RCSD.

29.    Plaintiff requires usage of a headset due to her physical disability.  However, in addition to the aforementioned harassment, this also became a problem at RCSD.

30.    Upon submission of forms from Plaintiff's doctor related to short-term leave on January 23, 2024, Mr. Jerry Cook, the principal, sent a school-wide e-mail indicating that any teacher wearing a headset would be written up for a violation.

31.    Of importance is the fact that Plaintiff received accommodations in the form of usage of a headset during the school day due to her frailty and disabled condition.  In fact, and in Defendants' responses to the EEOC, this occurrence is admitted by Defendants.

32.    Around the same time, Plaintiff visited a doctor and therapist to obtain increased treatment for her physical ailments—including those new physical ailments caused by the harassment.

33.    It was during this period that Plaintiff obtained FMLA leave for physical-related ailments.

34.    Thereafter, Plaintiff had another troubling interaction at RCSD.  While cleaning her classroom to verify its organization during FMLA leave, she was asked to leave the school and turn in her badge and key.  Plaintiff did so willingly, and called her husband to pick her up from school.

35.    Shortly thereafter, and to Plaintiff's surprise, a police officer arrived at the school to "escort Plaintiff off the property."  This was all after a friendly interaction with RCSD administration, including the Superintendent.

36.     On January 26, 2024, a concerning interaction arose after the "classroom clean-up" incident.  Plaintiff and her husband were contacted by the at least one (1) form of law enforcement agency.

37.     On January 29, 2024, criminal defense counsel of Plaintiff indicated that RCSD, despite not providing any warnings regarding school property, reported Plaintiff as "trespassing" on school property and was previously placed on suspension (rather than the truth that Plaintiff was on FMLA leave).

38.     Upon information and belief, Plaintiff, as a tenured teacher at RCSD, would have required to be put on notice that she was suspended.  Plaintiff never received notice that she was allegedly suspended.[1]

39.     Upon information and belief, Plaintiff was identified as being a danger and a threat to others at or around the school.  As such, and despite the FMLA physical ailment-related leave, Plaintiff was still targeted by harassment.

40.     Upon information and belief, the Department of Homeland Security became involved in this incident.

41.     Considering all of the troubling drama associated with these incidents, Plaintiff no longer feels safe living in her hometown.

### CAUSES OF ACTION

### Count 1 – Violation of ADA – Discrimination Based on Disability

42.     Plaintiff reincorporates paragraphs 1 through 41 as if fully set forth herein.

---

[1]     Interestingly, it does not appear that Plaintiff was ever put on suspension.

43.     The ADA articulates that one has a disability to the extent he or she has a physical or mental impairment that substantially limits one or more life activities of such individual; that there is a record of such an impairment; or has been regarded as having an impairment.

44.     Plaintiff falls within this category as she has been diagnosed with lupus disease, scleroderma, fibromyalgia, depression, and ADHD.  Moreover, Plaintiff received accommodations in the form of a headset and other relief-styled devices due to her frailty.

45.     Plaintiff's life activities are substantially limited due to her impairments.

46.     Because of these impairments, Defendants constructively terminated Plaintiff because they deemed her too disabled to be able to work.

47.     In fact, when Plaintiff began to increase usage of her accommodations (*i.e.*, headset, etc.), Defendants sent a mass e-mail indicating anyone using such accommodations would be terminated or otherwise "written up".

48.     Plaintiff's condition was apparent enough that Defendants had a duty to work with Plaintiff to otherwise accommodate or provide for her disability.

49.     Defendants then discriminated against Plaintiff on multiple occasions—leading to constructive termination—as well as a humiliation in the public community after reports to law enforcement, Homeland Security, and other relevant law enforcement agencies.

50.     As a proximate cause of this discrimination, Plaintiff has been harmed in the form of lost wages, humiliation in the public eye, embarrassment, and physical and emotional pain.

51.     As such, Plaintiff has been harmed and should be compensated for her damages.

**Count 2 – Violation of ADA – Retaliation for Reporting Incidents in Workplace**

52.     Plaintiff reincorporates paragraphs 1 through 41 as if fully set forth herein.

8

53.     Despite the harassment faced by Plaintiff, Plaintiff opted to report multiple incidents to administration/her employer to facilitate a transparent discussion regarding her disability.

54.     Considering the ADA requires that employees have the opportunity to report issues without the fear of retribution or retaliation, Defendants' actions are violative of the same.

55.     Plaintiff's usage of a headset, requests for assistance from administration and other staff during violent child outbursts, as well as requests for assistance with physical activities in her classroom (which were all denied or shunned) were protected requests that were violated by Defendants.

56.     Plaintiff's requests for assistance or accommodation were directly violated—especially considering the public mandate of "no headsets at school" or "figure things out yourself" by administration and leadership.

57.     Being written up for using a disability-related accommodation is a stark violation of the ADA, and then the further demands and harassment faced by Plaintiff exacerbated said violation.

58.     As a proximate cause of this discrimination, Plaintiff has been harmed in the form of lost wages, humiliation in the public eye, embarrassment, and physical and emotional pain.

59.     As such, Plaintiff has been harmed and should be compensated for her damages.

### Count 3 – Tennessee Disability Act – Discrimination Based on Disability

60.     Plaintiff reincorporates paragraphs 1 through 41 as if fully set forth herein.

61.     Pursuant to both the ADA and the TDA, Plaintiff can be defined as disabled.

62.     Considering her disability, Plaintiff requested accommodations and reported concerns—all of which were discriminated against in the form of refusal or "write-ups".

63.     As such, Plaintiff was discriminated against—directly based on her disability.

64.     As a proximate cause of this discrimination, Plaintiff has been harmed in the form of lost wages, humiliation in the public eye, embarrassment, and physical and emotional pain.

65.     As such, Plaintiff has been harmed and should be compensated for her damages.

### Count 4 – Tennessee Disability Act – Retaliation

66.     Plaintiff reincorporates paragraphs 1 through 41 as if fully set forth herein.

67.     As stated in Count 3 above, Plaintiff can be defined as disabled, and at all relevant time periods, Plaintiff had the right to request accommodations or otherwise report concerns in the workplace without facing the fear of retribution or retaliation.

68.     As Plaintiff faced increasing scrutiny in the workplace, Plaintiff reported these issues to upper management and administration—to no avail.

69.     In fact, after reporting these concerns, the harassment and concerns were exacerbated.

70.     In violation of both the ADA and TDA, Defendants retaliated against Plaintiff in the form of increased scrutiny, refusal to accommodate for issues, and eventual constructive termination.

71.     As a proximate cause of this discrimination, Plaintiff has been harmed in the form of lost wages, humiliation in the public eye, embarrassment, and physical and emotional pain.

72.     As such, Plaintiff has been harmed and should be compensated for her damages.


[*Remainder of page intentionally left blank*]

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

a. Compensatory damages as may be proved at trial for lost benefits, insurance, and other disability-related costs;

b. Reinstatement or bonus pay;

c. Compensatory damages for the public embarrassment, humiliation, and anxiety imposed by the violations of the ADA and TDA by Defendants;

d. Punitive damages as may be proved at trial for the problematic actions engaged in by Defendants;

e. Costs of court and the award of prejudgment and/or contractual interest

f. Attorney fees and expenses; and

g. Such other relief this Court deems just and proper given the circumstances.

Respectfully submitted,

*/s/ Roy Michael Roman*
Roy Michael Roman (TN BPR #042658)
**RMR Legal PLLC**
70 N. Ocoee Street
Cleveland, TN 37311
Telephone: (423) 528-8484
Facsimile: (423) 717-5564
E-mail: roymichael@rmrlegal.com

*Counsel to the Plaintiff*